[Civ. No. 3091. Third Appellate District.—July 24, 1926.]

JOHN R. McDONALD et al., etc., Appellants, v. LUCY A. RICHARDS, etc., Respondent.

[1] SCHOOL LAW — HIGH SCHOOL DISTRICTS — LEVY OF SPECIAL TAX—BUDGET OF SCHOOL TRUSTEES—DUTY OF SUPERVISORS.—Under section 6 of article IX, as amended in 1920, section 1 of article III, and section 12 of article XI of the constitution, the budget presented by the school trustees of a high school district constitutes the basis for the levying of a special tax by the board of supervisors of the county in which the high school district is situated, and it is the legal duty of the board of supervisors to levy a tax at such rate upon all the taxable property situated within the high school district sufficient in amount to meet all the legal requirements set forth in the budget.

[2] ID.—METHOD OF COLLECTING DATA AS BASIS FOR TAX LEVY—DUTY OF BOARD OF SUPERVISORS — CONSTITUTIONAL LAW. — The express language of section 6 of article IX of the constitution, as amended in 1920, authorizes the legislature to prescribe the method of collecting the data upon which the tax levy to maintain a high school district is to be based, and the board of supervisors is limited, in levying such tax, to the determination of the legality of the different items of expenditure proposed to be made, the legality of the purposes for which the money is sought to be raised, and the necessary rate of taxation upon the property within the district, in order to raise the required amount, which includes the determination of the value of the assessable property in the district in order to fix a rate that will raise the required sum to maintain the high school involved.

[3] ID.—CONDUCT AND MAINTENANCE OF HIGH SCHOOL DISTRICT—BOARD OF SCHOOL TRUSTEES — DISCRETION — CONSTITUTIONAL LAW — CON-

---

1. See 23 Cal. Jur. 68.

struction of Political Code.—Under section 6 of article IX, as amended in 1920, section 1 of article III, and section 12 of article XI, of the constitution, and section 1612a of the Political Code, the legislative discretion vested in the board of supervisors in levying a special tax for maintaining a high school district does not extend to the determination of either the policy, the wisdom, or the expense of maintaining a high school, but such matters devolve upon the board of school trustees.

[4] Id. — Provision for Maintenance of High School District — Functions of Board of Supervisors—Delegation of Authority. Under section 6 of article IX of the constitution, as amended in 1920, the legislature is limited, in making provision for the levying of taxes for maintaining a high school district, to the board of supervisors, and such function cannot be exercised by an administrative officer of the county.

[5] Id.—Power to Levy Special Tax—County Auditor—Mandamus. An application for a writ of mandate requiring the county auditor to levy a special tax for high school purposes, on the ground that the rate fixed by the board of supervisors was too low, will be denied, where the power to direct any other assessment has ceased to exist, and any other levy, if ordered, would but lead to confusion.

[6] Id. — Increase in Tax Rate — Deficiency Caused by Improper Levy—Board of Supervisors — Mandamus — Parties.—In a proceeding in *mandamus* to compel a county auditor to levy a special tax for high school purposes, the court is without authority to order the board of supervisors of the county to include within the tax rate to be levied for the present year a sufficient increase in rate to cover a deficit caused by the improper exercise of its legal duties in making the tax levy for the preceding year, where such board was not made a party to the proceeding.

(1) 36 **C. J.**, p. 1032, n. 69, 70, 72, 73, p. 1033, n. 74; 35 **Cyc.**, p. 1018, n. 37.   (2) 35 **Cyc.**, p. 1017, n. 29, p. 1018, n. 37, p. 1043, n. 26.   (3) 35 **Cyc.**, p. 1043, n. 27.   (4) 37 **Cyc.**, p. 965, n. 9.   (5) 38 **C. J.**, p. 551, n. 18, p. 781, n. 4.   (6) 38 **C. J.**, p. 934, n. 20.

APPEAL from a judgment of the Superior Court of Butte County.   J. O. Moncur, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Orville C. Pratt, Jr., and George F. Jones for Appellants.

5.   See 16 **Cal. Jur.** 776.

W. E. Rothe, District Attorney, and Bond & Deirup for Respondent.

Hill, Morgan & Bledsoe, as *Amici Curiae.*

THE COURT.—Appellants, as the Board of Trustees of Biggs Union High School in the County of Butte, filed their petition herein praying for a writ of mandate directed to the respondent as the Auditor of the County of Butte to levy a tax upon the property of the Union High School District sufficient in amount to produce the sum hereinafter stated. The petition sets forth the fact of the organization and existence of the Biggs Union High School District; the official capacity of the petitioners and also of the respondent; the fact that during the year 1925 and at the time specified in the code for taking such action the petitioners prepared and submitted a budget of the amount of money required for maintaining said High School District for the year beginning June 30, 1925, and ending on June 30, 1926; that said budget was submitted to the superintendent of schools; by him, after the performance of certain duties required by the law, approved and thereafter said budget was duly submitted to the board of supervisors of said county; that by the budget so submitted it was ascertained and set forth that the sum of $25,502.50 was the amount necessary to maintain said High School District during the period of time just herein mentioned; that after said budget was submitted to the board of supervisors of the County of Butte said board of supervisors failed and refused to levy a tax sufficient to raise the amount set forth in the budget so submitted by the Board of Trustees of said High School District as the amount necessary to be raised for the uses and purposes of said High School District and eliminated from said budget certain items, and thereafter said board of supervisors of Butte County levied a tax on the assessable property of said Union High School District sufficient only to raise the sum of $22,102.50. This action is prosecuted against the respondent as the Auditor of said County to compel said Auditor to immediately make a special tax levy against the taxable property located within said District sufficient to raise the sum set forth in the budget submitted by the Trustees of said District as neces-

sary for the maintenance of said Union High School during the year referred to. The respondent had judgment and the petitioners appeal.

It is not necessary for the purposes of this appeal to consider the particular items eliminated by the board of supervisors from the budget submitted by the Trustees of the District further than to state that the legality of the expenditures deemed necessary by the Trustees of the District appears to be unquestioned.

This action involves directly the consideration of section 1612a of the Political Code and section 6 of article IX of the constitution, as amended in 1920, and indirectly section 1 of article III and section 12 of article XI of the constitution.

It is insisted on the part of respondent that section 1612a is unconstitutional in that there is a delegation of legislative power to a ministerial officer, to wit, to the superintendent of schools; and, further, that if said section is not unconstitutional it is simply directory in its provisions and not mandatory as to the sum of money to be raised by taxes levied by the board of supervisors. On the part of the appellants it is insisted that the section of the code is constitutional and that its requirements, so far as accepting the amount of the budget as submitted by the Trustees is concerned, is mandatory upon the board of supervisors and that it is the bounden duty of the board of supervisors to levy a tax sufficient to raise the amount of money set forth in the budget as necessary for the maintenance of the high school in question. It may be stated that the amount of money to be raised by the budget so submitted and the tax levied upon the property of the District constitutes a special tax, as the budget sets forth the money needed by the District that will not be derived from the ordinary sources of revenue under the general tax levies provided for in the codes.

The section under consideration requires that the school board shall annually in the month of June make a budget showing all the purposes for which the School District will need money and the amount of money that will be needed for each of the purposes set forth in the budget. This budget is submitted first to the county school superintendent for his examination and for such changes as may be found necessary. After these changes are made, if any, the budget

is resubmitted to the Trustees of the district, who may either accept or reject the recommendations of the school superintendent. Thereupon the budget is again resubmitted to the county school superintendent, whose duty it is to approve the budget so made by the School Trustees and then calculate and determine the amount of money necessary to be raised by taxation as shown by the budget by deducting from the total sum of money necessary to be raised for the uses and purposes of the District the amount of revenue that will be obtained by the High School District during the current year from the sources otherwise provided for by general taxation and the laws of the state raising revenue for high schools, which we need not consider further than to state that it involves a calculation based upon the school attendance and matters of that kind which may be determined with reasonable accuracy by mathematical calculation and is the method provided for determining the amount of money that will be apportioned to the several high school districts from sources other than money raised by a special tax which we are considering.

As amended in 1920, section 6 of article IX of the constitution requires first that the legislature provide a state high school fund from the revenues of the state for the support of day and evening secondary and technical schools and shall provide for the distribution of such fund. It is further set forth that the amount shall not be less than thirty dollars per pupil in average daily attendance in the day and evening secondary and technical schools, etc. It is then further specified that the legislature shall provide for the levying of a county and city and county elementary school tax by the board of supervisors of each county, etc., sufficient in amount to produce a sum of money not less than the amount of money to be received during the current school year from the state for the support of such schools and not less than thirty dollars per pupil in average daily attendance. It is then further set forth that the legislature shall provide for the levying of a county and city and county high school tax by the board of supervisors sufficient in amount to produce a sum of money not less than twice the amount of money to be received during the current school year from the state for the support of public day and evening secondary and technical

schools, etc., provided that the high school tax levied by the board of supervisors shall produce not less than sixty dollars per pupil in average daily attendance. Then follows the further requirement: "The legislature shall provide for the levying of school district taxes by the board of supervisors of each county, and city and county, for the support of public elementary schools, secondary schools, technical schools and kindergarten schools, or for any other public school purpose authorized by the legislature."

Section 1 of article III of the constitution relates to the distribution of powers between the legislative, executive and judicial branches of the government, but for the reasons hereinafter stated we do not think it necessary to comment at length upon the application of this section, as our determination is controlled by other sections of the constitution and code provisions.

Section 12 of article XI of the constitution reads as follows: "The legislature shall have no power to impose taxes upon counties, cities, towns or other public or municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes."

It will be observed that section 6 of article IX of the constitution as amended enlarges the power of the legislature in relation to taxation and constitutionally fixes a sum of money to be raised by taxation upon the property in the state for school purposes, and while it does not directly levy a tax in so many words, it does fix a minimum amount which must be raised by the corporate bodies of counties and cities and counties for school purposes and it also authorizes the legislature to increase the minimum amount stated in the constitution, and when the minimum amount raised by the state exceeds the sum of thirty dollars per pupil, it is mandatory upon the board of supervisors or corporate authorities of counties and cities and counties to raise a like sum and in certain instances twice the amount received from the state. These are mandatory provisions of the state constitution and eliminate entirely the legislative discretion theretofore vested in the board of supervisors as to the amount of money to be raised for school purposes in the particulars mentioned.

Basing her argument upon the paragraph of section 6 of article IX of the constitution which we have quoted, the respondent argues that the third paragraph of section 1612a of the Political Code is unconstitutional in that it delegates to the superintendent of schools the power to fix the minimum sum which must be raised by a special tax levy, and, therefore, that the legislative discretion ordinarily vested in the board of supervisors as a tax-levying power is transferred to the school superintendent. The third paragraph of the section of the code referred to, after directing the superintendent to make certain calculations, estimates, etc., of the amount of money that will come to the school district from other sources, to deduct the same from the budget submitted by the school trustees and that the remainder so obtained by such deduction "shall be the minimum amount of the school district tax to be levied by the board of supervisors for the particular district." Based upon this language, it is argued that the whole section is unconstitutional in that a ministerial officer is clothed with legislative powers contrary to the provisions of the constitution which we have cited.

In 36 C. J. 1032 we find that the word "levy" as applied to taxation is given a variety of meanings, according to how it is used. It may be used in reference to either the legislative or administrative functions of taxation. It is used to denote the legislative function of charging the collective body of taxpayers with the sum to be raised and also to the ministerial function of estimating the taxes upon the assessment-roll showing the amount charged to each individual taxpayer. As applied to the determination of the amount or rate of taxes to be charged to the collective body of taxpayers it is a legislative function to be exercised only by the state or by some inferior political subdivision thereof. The duty of the other officers in relation to the tax appears to be purely ministerial and when used in relation to their duties it would seem to be used with that meaning.

In the case of *McCabe* v. *Carpenter*, 102 Cal. 469 [36 Pac. 836], we find the following language used: "But, since the power to levy a tax is purely legislative, it would seem to follow, that the power cannot be vested in any other authority of the local corporation than the body in which is vested the legislative power of such municipal corporation.

At all events, it could not vest such power in an executive officer of such corporation.''

Based upon the case of *McCabe* v. *Carpenter, supra,* and others cited, we find the statement in 24 Californi- Jurisprudence, 54, that ''the legislature may not vest power to determine the rate of levy or amount of tax in an executive officer of a public corporation; and an act by which the amount of a tax is left wholly to the discretion of an executive officer, there being no discretion in the local board, is invalid. If a board of education is regarded as a purely executive or administrative body, it is incapable of imposing taxes.'' In the case of *City of Coronado* v. *San Diego,* 97 Cal. 440 [32 Pac. 518], in considering the issuance of a writ of prohibition, we find the following statement: ''It is recognized as a universal rule that the writ of mandate will issue to compel the levy of a tax and it will issue for the reason that the act of making the levy is purely ministerial.'' This language does not appear to have been commented upon in any of the later California cases and is not referred to in the opinion in the McCabe case. We think, however, the two expressions may be differentiated. One refers to the ascertainment, the consideration or the reasoning exercised by the body charged with the duty of levying the tax which is the subject of consideration in the McCabe case and the act, by which we mean the physical act of stating the amount or auditing the amount or naming the amount, is what is referred to in the Coronado case. The Coronado case refers to the authority of the court to compel by *mandamus* the exercise of the ministerial act of levying a tax by the party charged with that duty and not to the discretion exercised by that body in determining either the amount or the rate. We refer to this case because we think it enunciates a principle applicable to the questions hereinafter considered.

Whether a high school district is considered a *quasi*-public corporation or an agency of the state or is a corporation coming within the terms used in section 12 of article XI of the constitution and may be charged under that section with the power of levying taxes is wholly immaterial, in view of the language found in section 6 of article IX of the constitution, as amended in 1920. It is therein specified that the legislature shall provide for the levying of school district taxes by the

board of supervisors of each county, etc. This language takes away from the school trustees of the school district the power of levying taxes and vests that power irrevocably in the board of supervisors. But it does not vest that power arbitrarily in the board of supervisors. The language of the section is that the legislature shall provide for such levy, that is, it shall outline a method or procedure to be followed in determining the tax levy and the amount thereof to be made by the board of supervisors of each county. If this were not true the section would simply read that the board of supervisors of each county shall levy a school district tax, etc. The providing for the levy being vested in the legislature, the legislature has a right, we think, to direct in what manner the board of supervisors shall be advised as to the amount of money to be raised for the support of any particular high school district and as to the necessities and requirements of such district and that the necessities and requirements of such district may be inquired into by the trustees of a high school district and set forth in the budget submitted by them.

In the case of *McCabe* v. *Carpenter, supra,* the court had under consideration the act of March 20, 1891, entitled, "An Act to provide for the establishment of high school districts," which, after setting forth the manner in which the amount of the tax should be ascertained, contained the following language: "And it shall be the duty of such authorities to levy such rate as will produce the amount estimated to be necessary for such purpose." It was there contended that this language in the statute was violative of section 1 of article III of the state constitution and it was so adjudged. This case refers to *Hughes* v. *Ewing,* 93 Cal. 414 [28 Pac. 1067], where it was held, in considering section 12 of article XI of the constitution, that the legislature cannot impose a tax upon the property or the inhabitants but must vest the power in the local authorities, and that if the legislature cannot impose a tax upon the property or inhabitants of the school district it would seem to follow that it cannot prescribe a procedure through which such tax would inevitably be levied without leaving some discretion in regard to it in the local authorities. The legislature imposes a tax when it requires an officer to make certain computations, the result of which must fix the amount to be levied. Such a process

enjoined upon local authorities does not vest in such authorities the power to tax as required by section 12 of article XI. At the time this decision was rendered section 6 of article IX of the constitution read: "The public school system shall include primary and grammar schools, and such high schools, evening schools, normal schools, and technical schools as may be established by the legislature, or by municipal or district authority; but the entire revenue derived from the state school fund, and the state school tax, shall be applied exclusively to the support of primary and grammar schools." Section 12 of article XI of the constitution was given full force and effect in its broadest application in the case of *McCabe* v. *Carpenter,* but it will be seen that such application must be materially limited when we consider section 6 of article IX as it now appears in the constitution. The original section did not permit the legislature to do just what it is now permitted to do, to wit, provide for the levying, which means to direct and set forth how the tax shall be levied. If the legislature is to provide for the levying we do not very well understand why such language does not authorize the legislature to prescribe the procedure for the levying of such tax. We do not mean by this to state that the entire legislative function of the board of supervisors is taken away, but we do mean that it is circumscribed and limited and applied to the legislative function hereinafter stated, and that the case of *McCabe* v. *Carpenter* is in its broad language no longer applicable by reason of the change in the state constitution.

In *People* v. *Lodi High School District,* 124 Cal. 694 [57 Pac. 660], the court had under consideration the act of 1895, where it was contended that legislative power was vested in the county school superintendent. That case refers to the McCabe case and notes the change by the legislature in relation to the amount of money to be raised by taxation. The act of 1895, after setting forth that an annual tax shall be levied, the amount of said tax being estimated by the county superintendent of schools, provides that the board of supervisors shall "levy such rate as will produce the amount estimated to be necessary for such purposes." It was there held that the estimate of the county school superintendent was only advisory and that the legislative power of the board

of supervisors was not necessarily limited to the budget submitted by the school superintendent, but that they had the discretion to ascertain and determine the amount which the board would or might consider necessary to maintain the high school and fix a rate which would result in the raising of the money deemed by the board necessary for the maintenance of the school. It was further said in the Lodi High School case, however, that no reason appeared why a special tax might not be levied without a previous election authorizing such tax and that the court knew "of no limitation upon the powers of the legislature to authorize by general law a tax for a special purpose without first submitting the proposition to a vote of the electors. Having voted that they will organize a high school under the law which gives to the supervisors the power to levy a special tax to support the school there would seem to be no occasion for submitting the question to a vote of the people a second time, except it might be to determine the rate. But that is a function within the powers of the supervisors, which we think the legislature could confer and has conferred upon them."

The questions which we are considering here were also before the supreme court in the case of the *Board of Education of the City of Woodland* v. *Board of Trustees*, 129 Cal. 599 [62 Pac. 173]. The McCabe case and the Lodi High School case are both considered in the Woodland case, and the distinction pointed out between school districts organized under the law relating to municipalities and what are ordinarily termed code districts. The Municipal Corporation Act there under consideration provided that the school board should submit to the city trustees an estimate of the amount of money required for conducting a school for the school year and made it the duty of the city trustees to whom the estimate was submitted to levy a special tax sufficient in amount to maintain the high school. It was there held that the discretionary power was vested in the city trustees as the taxing body of the city to determine what amount would be sufficient for the purpose and that the city trustees possessed the authority to fix such amount and was not concluded by the estimate made by the high school board. There is this difference to be noted between the Woodland case and the case at bar: In the Woodland case the school district and the city of Woodland were territorially one and

the same. The city trustees constituted the tax-levying body of the city which took into consideration all of the needs and requirements of the entire city, including as well the educational department thereof and other departments constituting the city government. In the case at bar the board of supervisors of the county of Butte have jurisdiction over a separate and distinct municipality territorially different and are not necessarily charged with the same knowledge, duties and responsibilities as pertain to the trustees of a city. While it is true that a school district, though situated within a city and having territorial limits coincident with the territorial limits of the city, is for certain purposes a distinct entity, yet the trustees of a city and the high school board of such a high school district are responsible to the same electorate, which we think differentiates to some extent the powers and duties and responsibilities of city trustees under such circumstances acting under the Municipal Corporations Act and those of supervisors limited and circumscribed in the performance of their duties as provided for by the state legislature under the powers granted by section 6 of article IX of the constitution. As stated in the case of *Board of Education* v. *Trustees, supra,* under the Municipal Corporations Act [Stats. 1891, p. 28], a school district is not in fact a separate corporate body, but is merged in the city and the board of education is but a department of the general city government. Thus for governmental purposes under the Municipal Corporations Act the district is a department. This differentiation from high school districts provided for under the codes must be borne in mind in considering the relative powers and duties of trustees of school districts and boards of supervisors, and cases which are applicable under the Municipal Corporations Act are not controlling where the legal status or relations are not the same. A somewhat similar case to the Woodland case which we have been considering is that of *Board of Education* v. *Trustees,* 96 Cal. 42 [30 Pac. 838], where section 2 of the act under consideration reads as follows: "Upon receiving the estimate of moneys needed, as provided in section 1, the board of trustees shall, at the time of levying other city taxes, levy a direct special school tax, which, after making proper allowance for delinquencies, will produce a sum that will make the amount required by the board of education; provided,

however, that in no case shall such special school tax exceed twenty-five cents on the one hundred dollars.'' Section 1 of the act there under consideration provided that the school board should furnish the city trustees with a detailed statement of the probable amount of money required for the current year and also an estimate of the amount that would be received from the state and county for school purposes, leaving the difference between the estimated necessities and the amount to be received from the state and county as the sum to be raised by a special tax. It was there held that the detailed statement by the board of education was only directory or advisory and that it was not mandatory upon the city trustees to levy a tax which would raise the exact amount named in the estimate or report or detailed statement submitted by the board of education. This case, however, was governed by the statute to which we have referred and the subject matter there pertained to a school district within a municipality as a department of the municipality and not to a code school district coming under the terms of section 1612a of the Political Code and section 6 of article XI of the state constitution.

The next case elucidating the principle governing taxation in school districts and the relative duties of the different boards is that of *MacMillan* v. *Clarke,* 184 Cal. 491 [17 A. L. R. 288, 194 Pac. 1030]. The immediate subject of controversy was the levying of a tax to repay an indebtedness incurred for supplying pupils with free text-books. This case refers to section 12 of article XI in relation to the levying of taxes by the legislature and also refers to the cases which we have heretofore cited. Sections 1756 and 1757 of the Political Code under review in the case of *MacMillan* v. *Clarke* provided, first, that, the high school board should make and file with the superintendent of schools an estimate of the amount of money required for maintaining the high school, setting forth in detail the different items; that such estimate should be submitted to the board of supervisors, and then further provided that the board of supervisors at the time of making the tax levy for the year for county purposes should levy a special tax on the property of the high school district ''sufficient in amount to carry out the purposes legally specified in the said estimate.'' The constitutionality of such a levy

was upheld and the cases referred to supporting the ruling adopted by the court in that case. Attention was also called to the fact that the statute under which the case of *McCabe* v. *Carpenter* was decided has been amended, and amended for the purpose of obviating the objections urged in the McCabe case. Replying to the argument that section 2 of the act under consideration in the MacMillan case rendered the act unconstitutional, when providing for reimbursement of a high school district for the cost of text-books supplied pupils residing outside such district upon an estimate furnished by the superintendent of schools and providing that the supervisors shall include such amount in levying the high school tax, the court said: "It is argued that this provision leaves no legislative discretion to the supervisors, but requires them to increase their tax levy by the precise sum included in the superintendent's estimate. It, however, signifies no more than a direction to the supervisors to include in their tax levy a sufficient amount to cover this extra cost. It merely happens, this being a liquidated claim, that the estimate of the superintendent, if his figures are correctly compiled, must of necessity correspond with 'sufficient amount' covering the legislative discretion of the supervisors. If there is a debt of one thousand dollars to be provided for, there can be little difference in meaning between a direction to the supervisors to add the amount to the tax levy, or a direction to make the levy sufficient to cover the indebtedness. The element of discretion only exists in the fact that the taxing power is not bound to accept the superintendent's figures as correct and final any more that in the matter of estimates for teachers' salaries or other school expenses." The opinion in the MacMillan case also calls attention to the further fact that schools such as we are here dealing with are matters of state and not of local jurisdiction in that the board of supervisors is not given power to arbitrarily determine whether a high school district shall or shall not exist or shall or shall not be supplied with funds sufficient to enable it to function, but exercises power subject to the codes providing for the raising of revenue. The opinion says: "The public schools are state schools, and it is within the discretion of the legislature whether to make them a charge upon the state at

large, or to do as has been done in the matter of elementary schools, make them partly a charge upon the state at large and partly upon local districts, or, as in the case of high schools, place practically the entire burden for the local school upon a district organized for that purpose." And then, referring to the McCabe case, disposes of it as follows: "But conceding the rule as recognized in *McCabe* v. *Carpenter,* 102 Cal. 469 [36 Pac. 836], its application goes no further than to place the constitutional inhibition upon the power of the legislature to assess and collect the tax." It must be borne in mind that the case of *MacMillan* v. *Clarke* was also decided prior to the adoption of the amendment to section 6 of article IX of the constitution, or at least before that amendment became effective.

We do not find any special difference in the language used in section 1612a of the Political Code, where it is stated that the amount of the budget submitted by the school trustees, less the amount ascertained that the district will receive from other sources, shall be the minimum amount of the school district tax to be levied, and the language used in section 1757 of the Political Code upheld in the MacMillan case, which reads: "shall levy a tax on the property of the high school district sufficient in amount to carry out the purposes legally specified in the said estimate." It is hardly necessary to state that the items included in the budget to be presented by the Board of School Trustees of the Union High School District must, necessarily, be legal items in order to be binding upon anybody, as the board of supervisors could not be called upon to approve or levy a tax for any illegal purpose. It therefore follows that the language used in the different sections is practically of the same legal meaning and effect, i. e., that whenever such a budget so prepared is presented to a board of supervisors it is the legal duty of the board of supervisors to levy a tax upon the assessable property of the high school district involved sufficient to meet all the purposes legally specified in the budget. The board of school trustees of the high school is charged with the legal duty of presenting such a budget as the basis for the tax levy to be made by the board of supervisors. The board of supervisors, we think, possesses the legislative discretion to determine whether the different

items making up the budget presented by the school trustees are for items of expenditure which the board of trustees may legally make or incur during the school year. The policy or wisdom of making the expenditures in the maintenance of a high school is, we think, a matter which the legislature intended to refer to the trustees of the high school district as being the representative or governing body of the high school district to which the electors have entrusted such responsibility in the conduct and supervision of the high school district for which they have been elected. This leaves to the board of supervisors the legislative discretion of determining the legality of the several requirements of the budget and also the amount of the levy necessary to meet such requirements. If such is not the case then the constitutional provision which authorizes the legislature to provide for the levying of school district taxes by the board of supervisors has no meaning whatever further than to say the board of supervisors may levy a tax without any direction or control or supervision of the legislature whatsoever, and we think the determination of the question here presented comes back to the language of the section which says that the legislature shall provide for the levying of the school district tax and means that the manner and method of levying the tax and collecting the data which shall constitute the basis for the levying of the tax may be set down in explicit language by the legislature and the procedure to be followed set forth in detail. As further bearing on the same subject, we may call attention to one of the subdivisions of section 1764 of the Political Code relating to county high school taxes as it now reads, as amended in 1921 [Stats. 1921, p. 779]: "The board of supervisors of such county, or city and county, must, annually, at the time and in the manner of levying other county taxes, levy and cause to be collected for the county, or city and county, high school fund, a tax to be known as the county high school tax, the minimum rate of which shall not be less than sufficient to raise the minimum amount estimated to be raised by the county superintendent as hereinbefore provided." And also one of the subdivisions of section 1891 of the Political Code relating to school districts in different counties, which reads: "The board of supervisors of each county shall thereupon de-

termine the rate of taxation necessary to be levied upon the property in said district situated in the county, such rate to be sufficient to meet the proportion of taxes necessary to be raised in the county for the purpose of paying the principal ánd interest of the bonds of the district and all other expenses of the district as shown by the estimate of the county superintendent of schools having jurisdiction over such district.'' In these subdivisions the minimum amount to be raised is set forth in almost identical language with that used in section 1612a of the Political Code.

[1] The conclusion to be drawn from the foregoing *résumé* of the cases and constitutional sections considered is that the budget presented by the school trustees of a high school district constitutes the basis for the levying of a special tax by the board of supervisors of the county in which the high school district is situated; that it is the legal duty of the board of supervisors to levy a tax at such rate upon all the taxable property situated within the high school district sufficient in amount to meet all the legal requirements set forth in the budget; [2] that the express language of section 6 of article IX, as amended, authorizes the legislature to prescribe the method of collecting the data upon which the tax levy is to be based, and that the board of supervisors is limited in levying the taxes which are to be raised by such special assessment to the determination of the legality of the different items of expenditure proposed to be made, the legality of the purposes for which the money is sought to be raised and the necessary rate of taxation upon the property within the district in order to raise such amount. This includes as well the determination of the value of the assessable property in the district in order to fix a rate that will raise the required sum to maintain the high school involved. [3] We think that the constitutional provisions which we have been considering and section 1612a of the Political Code place the duty of levying a special tax upon boards of supervisors in about the same situation as when a special tax will be directed by *mandamus* to be levied for the purpose of meeting interest upon bonds or similar obligations; that the legislative discretion vested in the board of supervisors is limited in the manner in which we have herein set forth and does not extend to the de-

termination of either the policy, the wisdom or the expense of maintaining a high school, but that such matters devolve upon the board of school trustees and that it was the purpose both of the amendment to the constitution and of the act of the legislature to vest in the school trustees of district high schools both the policy and the wisdom of incurring expenses in the conduct and maintenance of high schools.

The conclusions which we have reached do not, however, authorize a reversal of the judgment entered herein. The board of supervisors has levied a special high school tax upon the assessable property within the territorial limits of the Biggs Union High School District. The objection is that the rate was too low. But this objection comes too late. A somewhat similar situation is presented in the case of *Bell* v. *Fee Title Co.*, 69 Cal. App. 437 [231 Pac. 598]. In this case a petition to have the cause heard in the supreme court after judgment in the appellate court was denied. The court in that case, considering the tax which was levied at a rate insufficient to raise the minimum sum set forth in the budget, disposed of the opposition to its legality as follows: "Section 1764 of the Political Code requires the county superintendent of schools to furnish the board of supervisors of the county embracing his school district with an estimate of the minimum amount of the school funds to be required for the current school year; and it is further provided that the board of supervisors must annually levy and cause to be collected a tax to be known as the county school tax, the minimum rate of which shall not be less than sufficient to raise the minimum amount so estimated. It is insisted by appellant that the levy in question was much less than the minimum called for by the school superintendent, and was therefore illegal and void, but respondent argues that this procedure would result in delegating legislative powers to the county superintendent, which would render section 1764 of the Political Code unconstitutional. Appellant's complaint in this behalf appears to be that because the board did not require as great an amount in taxes from its property as might have or should have been done, it should escape from paying any taxes. Unless it can be shown that some part of the tax in question was illegally

levied, the fact that an additional sum might have been required does not invalidate the assessment.''

[4] Section 6 of article IX of the constitution limits the legislature in providing for the levying of taxes to the board of supervisors, while without this provision it might be argued that some other portion of the county machinery might be seized upon for the purposes of levying a special high school tax. The people of the state have seen fit to adopt the amendment in such form as to limit the legislature in making provision for the levying of taxes to the boards of supervisors of the respective counties and such function cannot, therefore, be exercised by some administrative officer.

[5] The facts before us show that the time has long since gone by when any authority exists to order any change in the tax levy already made. The different sections of the Political Code relating to the levying of county taxes, the making out of the assessment-rolls by the different ministerial officers having to do therewith show that the power to make any other assessment has ceased to exist and that any levy, if it were possible in this proceeding for this court to so order, would but lead to confusion, and that, under such circumstances, *mandamus* will not issue. As stated in the case of *Board of Education* v. *Common Council,* 128 Cal. 369 [60 Pac. 976], it is apparent that the writ if granted could not be enforced and would be unavailing. In such cases *mandamus* will not issue. To the same effect is the case of *Board of Education* v. *Common Council,* 1 Cal. App. 311 [82 Pac. 89]. If this case were against the board of supervisors of the county of Butte, *mandamus* would not now lie for the reasons stated in the two cases just cited. [6] Nor can we order the board of supervisors of the county of Butte to include within the tax rate to be levied for the present year a sufficient increase in rate to cover the deficit caused by the improper exercise of their legal duties in making the tax levy for the year beginning June 30, 1925, and ending June 30, 1926, for the simple reason, if for no other, that the board of supervisors of the county of Butte is not a party to this proceeding.

We are, therefore, limited simply to affirming the judgment, and it is so ordered.