[Civ. No. 5055. Third Appellate District.—November 25, 1933.]

C. F. CROW, Appellant, v. THE BOARD OF SUPERVISORS OF THE COUNTY OF STANISLAUS et al., Respondents.

452

Dennett & Zion for Appellant.

U. S. Webb, Attorney-General, Robert W. Harrison, Chief Deputy Attorney-General, H. H. Linney, Deputy Attorney-General, Breed, Burpee & Robinson and John F. Curry, as *Amici Curiae* on Behalf of Appellant.

R. R. Fowler, District Attorney, and F. O. Hoover, Deputy District Attorney, for Respondents.

Everett W. Mattoon, County Counsel (Los Angeles), and J. H. O'Connor, Assistant County Counsel, as *Amici Curiae* on Behalf of Respondents.

PLUMMER, J.—This proceeding is before us upon an appeal by the petitioner from a judgment of dismissal entered in the trial court, after sustaining a demurrer to the appellant's petition for a writ of review without leave to amend.

The proceeding was instituted in the court below for the purpose of having set aside and annulled the order of the Board of Supervisors of the County of Stanislaus adopting a budget for the fiscal year 1933–1934, and fixing a tax rate to be levied upon the taxable property of said county.

The petition sets forth that the appellant is a resident, property owner and taxpayer of the county of Stanislaus; that in the assessment-roll of the county of Stanislaus as equalized the value of the taxable property therein was fixed at the sum of $42,757,680. Upon this valuation the respondents fixed a tax rate of $1.95 for each $100. The petition also sets forth that the budget approved and allowed by the respondents for the fiscal year 1933–1934 exceeds by more than 5 per cent the county expenditures for the fiscal year 1932–1933; that said excess amounts approximately to the sum of $130,414, after allowing 10 per cent for anticipated delinquencies; that the amount allowed by the board of supervisors is in excess of the amount allowed by section 20 of article XI of the Constitution as adopted at the special election held June 27, 1933.

The petition further sets forth that the amount proposed to be expended by the respondents for the fiscal year 1933–1934, including the encumbered balance for the preceding year, is the sum of $811,102, after excluding therefrom the amount raised to pay interest and redemption charges upon outstanding bonds, and that the county spent, during the preceding fiscal year, after deducting the amount expended for interest and redemption charges for bonds, the sum of $648,370, this expenditure being less the amount raised for the purpose of supporting schools now taken over by the state.

It is further set forth in the petition that 5 per cent of the expenditures for the fiscal year 1932–1933 would amount to the sum of $32;468, giving an allowable expenditure for the fiscal year 1933–1934 of the aggregate sum of $680,788. These figures and conclusions drawn therefrom are all based upon the elimination of expenditures made by the county for high and elementary school purposes, as provided by section 6 of article IX of the Constitution, in force during the fiscal year 1932–1933. An exhibit is also attached to the petition showing the budget allowances proposed for the fiscal year 1933–1934, in which appears an unbudgeted re-

serve item in the sum of $13,949, and also a general reserve item of $100,000, which will be referred to later.

█ No hearing having been had upon the petition in the court below, the power of this court upon appeal cannot be extended to annul, modify or affirm any action of the board of supervisors. All that this court can do is to either affirm or reverse the judgment and direct the lower court to proceed and hear and determine the merits of the petition after a full return has been made by the respondents thereto. Section 1075 of the Code of Civil Procedure relates only to the power of the court on hearing after a return had been had.

The record contains nothing indicating the reasoning of the lower court leading to the sustaining of the respondents' demurrer to the appellant's petition without leave to amend. Two vital questions, however, are tendered for our consideration, to wit: First: Do the facts show that the petitioner is entitled to a writ of review? Second: Did the respondents adopt a correct base upon which to estimate the taxes legally allowable to be raised for the fiscal year 1933–1934, and the expenditures which the Constitution permits?

While the prayer is for an annulment of the tax levy, nothing appears in the petition attacking either the legality or even the regularity of the tax levy. No issue is raised as to the legality of any of the purposes for which the budget expenses have been estimated. The general rule as to the limitation of the rate or amount of taxes to be levied is thus stated in 61 C. J. 152: "A constitutional limitation on the rate or amount of taxes which may be levied in any one year has been held to render illegal and void a tax imposed beyond the constitutional limitation, at least in respect to the excess. The limitation has been held to be a limitation only of the power to provide revenue by taxation on an *ad valorem* basis, and there is always an implied exception as to taxes levied for the purpose of paying debts contracted before the adoption of the constitutional restriction. Where, by statute, a limitation has been imposed on the rate of taxation, except taxes to meet certain emergencies, any further statute purporting to admit of a departure from the general policy of limitation will be strictly construed."

Again, on page 556 of the same volume, the text reads: "Where taxes are levied to the prescribed limit, the power

is exhausted, and any excess taxes levied in excess thereof are illegal and void . . . except where the excess is only slight, in which case it may be regarded as a mere irregularity, . . . and not only the excess, but the whole levy is illegal and void, where the illegal excess is not separable from the part that otherwise would be legal.''

As to the remedy, the text-writer, in the same volume, page 578, sets forth the rule as follows: ''*Certiorari* may lie to review the proceedings of a levy board in levying a tax, and to quash the levy so far as it is illegal, but it has been held that such review will be allowed only in exceptional cases, in which the public interests may be jeopardized. Upon such review the proceedings of the boards and corporate bodies in levying a tax may be reviewed and reversed if found void, and the constitutionality of the statute under which the proceedings were had may be inquired into and determined.''

Section 1074 of the Code of Civil Procedure reads: ''The review upon this writ (*certiorari*), cannot be extended further than to determine whether the inferior tribunal, board or officer has regularly pursued the authority of such tribunal, board or officer.'' ▮ In commenting upon this section the text-writer in 4 California Jurisprudence, page 1106, states what we adopt as the correct rule: ''It is clear that in such cases the reviewing court has no authority to go beyond the question of jurisdiction, for upon every question, except the mere question of power, the action of the inferior tribunal is final and conclusive, and the reviewing court has nothing to do with the proceedings before the inferior tribunal, except so far as an examination of such proceedings is necessary to determine the question of its jurisdiction. If such tribunal has regularly pursued its authority, the inquiry stops. Errors of law committed by the inferior court in the exercise of its authority cannot be considered, and in such case no matter how erroneous the decision may be, even on the face of the record, the reviewing court has no power to change, annul or reverse it in a proceeding in *certiorari*.''

▮ A writ of review not being a writ of absolute right, another well-settled rule of law has been adopted for the guidance of courts, to wit: Will the issuance of such a writ lead to inextricable confusion? This rule applies to both proceedings in *mandamus* and also in *certiorari*.

In the case of *McDonald* v. *Richards,* 79 Cal. App. 1 [248 Pac. 1049], this court, in considering the questions here involved ruled as follows: "The facts before us show that the time has long since gone by when any authority exists to order any change in the tax levy already made. The different sections of the Political Code relating to the levying of county taxes, the making out of assessment rolls by the different ministerial offices having to do therewith, show that the power to make any other assessment has ceased to exist and that any levy, if it were possible in this proceeding for this court to order, would but lead to confusion, and that under such circumstances *mandamus* will not issue." The facts in that case were that *mandamus* was sought to compel the board of supervisors to increase a tax levy after the expiration of the time fixed in the statute for making tax levies. The excerpt from the opinion in the case of *McDonald* v. *Richards, supra,* which we have just set forth was quoted with approval by the Supreme Court in the case of *Pasadena Junior College District* v. *Board of Supervisors, etc.,* 216 Cal. 61, 75 [13 Pac. (2d) 678].

By section 1068 of the Code of Civil Procedure a writ of review can only be issued as against an inferior tribunal, board or officer exercising judicial functions to determine if jurisdiction has been exceeded, and not unless it appears that there is no plain, speedy or adequate remedy otherwise afforded.

The proceeding in *certiorari* was upheld in the case of *Maxwell* v. *Board of Supervisors of Stanislaus County,* 53 Cal. 389. The want of jurisdiction on the part of the board of supervisors appeared upon the face of the record. The contract was let without notice being given as required by law.

The case of *Boskowitz* v. *Thompson,* 144 Cal. 724 [78 Pac. 290], relied upon by the appellant, is not in point for the reason that the case was prosecuted as an injunction suit to prevent the collection of a tax which was declared void because levied for an illegal purpose. Practically the same thing is true in the case of *Hughson* v. *Crane,* 115 Cal. 404 [47 Pac. 120], where the amount of the assessment was held to be excessive. These cases are limited in their application even where the amount of the expenditures is fixed in excess of the legal limit by the case of *Beck* v. *Barnes,* 129 Cal. App.

187 [18 Pac. (2d) 749], where it is held that if it appears that the excess is really negligible as compared to the amount of the tax to be raised, judgment annulling the tax will not be entered. In that case the levy was made for the purpose of raising the sum of $1,250,000. The amount raised was in fact about $23,000 in excess of that sum. It was held that this limited excess did not void the assessment, and judgment nullifying the assessment was denied.

In *Mallory* v. *Griffin*, 43 S. D. 71 [177 N. W. 818], in an action to quiet title, the Supreme Court of South Dakota held void a tax deed, following a sale, based upon an excessive levy. The statute in that case provided as follows: "No greater levy of county tax shall be made than will be equal to the amount of such expenses with an excess of 5 per cent."

In *St. Louis, San Francisco Ry. Co.* v. *Andrews*, 137 Okl. 222 [278 Pac. 617], the Supreme Court of Oklahoma held that every tax levy exceeding the legal limit is invalid, unless authorized by a vote, as required by law. That was a case brought for the purpose of recovering tax money paid under protest. The legal limit for the purpose for which the tax was levied was the sum of 4.25 mills. The rate adopted was 5.204 mills.

None of these cases hold that *certiorari* is a proper remedy, nor is the question of whether the action of the board of supervisors, is judicial, legislative or ministerial in making up a tax budget and levying a tax upon the property of a county considered as passed upon. Section 1068 of the Code of Civil Procedure contains a limitation upon the rule which prevails in other states, and authorities from other states can only be considered in the light of this section of the code. No authorities have been cited holding that the making up of a county budget is judicial in character. In going over the different items of proposed expenditures we can perceive no difference in the action of a board of supervisors than of the legislature in making appropriations for specific purposes. In both instances it is a matter of legislative discretion as to whether the money shall be expended for a particular purpose, and the amount to be expended is a matter of calculation. This court, in the case of *McDonald* v. *Richards, supra,* had occasion to examine the character of the act of the board of supervisors now under considera-

tion, and there said: "In 36 C. J. 1032 we find the word 'levy' as applied to taxation is given a variety of meanings, according to how it is used. It may be used in reference to either the legislative or administrative functions of taxation. It is used to denote the legislative function of charging the collective body of taxpayers with the sum to be raised and also to the ministerial function of estimating the taxes upon the assessment roll showing the amount charged to each individual taxpayer. As applied to the determination of the amount or rate of taxes to be charged to the collective body of taxpayers it is a legislative function to be exercised only by the state or by some inferior political subdivision thereof. The duty of the other officers in relation to the tax appears to be purely ministerial and when used in relation to their duties it would seem to be used with that meaning. In the case of *McCabe* v. *Carpenter*, 102 Cal. 469 [36 Pac. 836], we find the following language used: 'But, since the power to levy a tax is purely legislative, it would seem to follow, that the power cannot be vested in any other authority of the local corporation than the body in which is vested the legislative power of such municipal corporation.' "

The opinion in the McDonald case, citing authorities to support the rule laid down therein, further holds that *mandamus* is a proper remedy to compel the levying of a tax, which, of course, is based upon the conclusion that the levying of a tax is ministerial (*City of Coronado* v. *San Diego*, 97 Cal. 440 [32 Pac. 518]), where it is said: "It is recognized as a universal rule that the writ of mandate will issue to compel the levy of a tax, and it will issue for the reason that the act of making the levy is purely ministerial." The remedies available to an aggrieved taxpayer are fully set out in 24 California Jurisprudence, pages 299–318. (See, also, *Whitmore* v. *Brown*, 207 Cal. 473 [279 Pac. 447].)

It may also be observed that none of the cases cited by the appellant consider that confusion would follow, or that the regular and legitimate functions of a county government would be interrupted, if not seriously or wholly impaired, as would be the case by allowing a writ of review herein, even if the amount of money realized by reason of the budget and the tax levy as adopted by the respondents produced a sum of money somewhat in excess of the limit speci-

fied in the constitutional provisions hereafter considered. (*Beck* v. *Barnes, supra.*)

The question then occurs, if we adopt the views of the appellant, is the amount of the budget allowed for the fiscal year of 1933–1934, by the respondents, so excessive and disproportionate as to nullify the entire budget? On the part of the appellant it is claimed that this excess amounts to a sum somewhat in excess of $130,000. This calculation excludes all moneys raised by taxation during the fiscal year 1932–1933 for high and elementary school purposes. On the part of the respondents the figures are to the effect that even though all school moneys raised by the county during those years be excluded from the calculation, the alleged excess is only about the sum of $16,000, which in comparison with the amount of money to be raised in the county, is not disproportionate, and is not such an excess as to justify a court in adjudging the budget void.

In making his calculation we think the appellant is in error in including the sum of $13,949 listed as "unbudgeted reserve", and also the sum of $100,000, listed as a "general reserve fund".

■ In subdivision 3 of section 3714 of the Political Code provision is made both for unappropriated reserves and for a general reserve fund. The second and third paragraphs of subdivision 3 set forth purposes for which such funds may be established, and the manner and circumstances under which they may be drawn upon to meet unanticipated contingencies. Those funds are carried in the budget from year to year, and cannot be considered, we think, as within the provisions of section 20 of article XI of the Constitution, as amended.

■ Including these items, while we cannot make our figures correspond with those of the respondents, they do establish the fact that the claimed excess is negligible in comparison with the amount of money necessary to be raised to support the ordinary and usual functions of the county of Stanislaus, and the expenditures which can be and must be legally made in support of such functions. ■ The expenditures that may legally be incurred by a county are not limited to what may be commonly understood by the term "governmental functions". An examination of any budget, and of the budget law to which we have referred, confirms

this statement. The enforcement of law is not the only expenditure within the contemplation of section 20 of article XI, but that term includes all the expenditures that may be legally made by any county.

■ Was the base presented by the appellant to the trial court in his petition, the correct one for determining whether the 5 per cent increase made by the respondents was illegal? The argument presented to us upon appeal corresponds with the allegations of the petition. As stated herein, we find the appellant excludes from the base upon which calculations are to be made, all moneys which were raised by the county of Stanislaus during the fiscal year 1932–1933, under and in accordance with the provisions of section 6 of article IX of the Constitution. In this we think the appellant is in error. Section 20 of article XI of the Constitution, as adopted on June 27, 1933, so far as material here, reads as follows: "The expenditures, other than expenditures to pay interest and redemption charges, etc., . . . shall not in any way exceed by more than 5 percentum the expenditures . . . for the preceding year, unless previously authorized by two-thirds vote of the qualified electors of any such county, city and county, district or political subdivision or by a majority vote of the electors of such municipality, voting at an election held for that purpose, or unless previously authorized by the State Board of Equalization in such manner as may be provided by law," etc.

The section further provided that on and after January 1, 1935, "the legislature shall have power, by two-thirds vote, of all the members elected to each of the two houses, to limit the amount of taxes which may be imposed upon real and personal property, according to the value thereof, for county, or city and county purposes".

The word "expenditure" is thus defined in 25 C. J., page 172: "The spending of money; the act of expending; disbursement; expense; money expended; a laying out, as of money; payment."

At the time of the adoption of section 20 of article XI of the Constitution just referred to, section 15 of article XIII of the Constitution was amended to provide that thereafter all moneys required to be raised by counties under the provisions of section 6 of article IX of the Constitution

for county high and elementary school purposes should be provided by the legislature.

Section 15 of article XIII, *supra,* as amended, contains the following proviso: ''Provided, however, that all sums so apportioned shall be considered as though derived from county and city and county school taxes for the support of county and city and county government and not money provided by the state within the meaning of said section, nor shall any revenues so apportioned be regarded as appropriations from the funds of the state within the meaning of section 34a of article IV of this Constitution.'' While this proviso has been considered and argued at length by the respective parties to this proceeding, we do not find that it has any further application to the questions tendered for our solution, further than to state that the money so raised and provided by the state, while considered as though derived from county, and city and county school taxes for the support of county and city and county government, and not money provided by the state, etc., is not money raised by a tax burden levied upon the property owners of any particular county, and while it would seem to be deducible from the language used that such sums are not to be considered hereafter as coming within the provisions of section 20 of article XI limiting expenditures, that question is so far outside of the issues tendered for our determination that we are not to be considered as expressing any opinion thereon. The question then occurs, what was within the contemplation of the legislature and the people of the state in adopting section 20 of article XI as a part of the Constitution?

Taking the different sections as a whole, adopted on June 27, 1933, the conclusion is unescapable that it was the intent and purpose of the several amendments to shift the burden of school taxes to some extent from the counties to the state, and also to limit the expenditures of the several counties for the period of two years. In doing so a base was provided for determining the extent to which counties might increase expenditures. That base was and is fixed at 5 per cent upon the expenditures of the previous year, with certain exceptions to which we have referred. The previous year set forth in the section must in this case refer to the expenditures made or incurred during the

fiscal year 1932–1933. We do not think the legislature contemplated going back to any year preceding, for the simple reason that the section further provides ''that if any political subdivision of this state that decreases the amount of its expenditures in any year or years, may increase in any subsequent year or years, the amount of expenditures by the amounts, or any fraction thereof, so reduced'', etc. The ''succeeding year'' precludes the idea of any retroactive effect.

In applying the provisions of section 20 of article XI to the instant case three rules of construction are to be observed: 1st. The language of the section; 2d. The intent or purpose sought to be accomplished; 3d. The effect of provisions or exceptions contained in the section.

 Observing the first rule, the word ''expenditures'' is broad enough to include every item of payment and every dollar of money paid out by the county, irrespective of the source from which the money is obtained. The proviso in the section under the third rule, excluding interest and redemption charges on bonds, would fall under the expression that the exclusion of one item of expenditure would include all other items of expenditure. Thus, the base established following this rule for determining the 5 per cent increase would include moneys received from the state derived from the gasoline tax, and apportioned to the respective counties according to the method provided by the legislature for use upon county roads. However, we think that both the general language used in the section and the rule relating to the proviso must give way to the enforcement of the intent or purpose sought to be accomplished, to wit: The lessening of the burden of taxation upon the respective counties and its assumption by the state, and therefore that the section relates only to moneys derived from county taxation, and not from gasoline money distributed by the state. Gasoline taxes are in no sense of the word county taxes. While distributed in proportion to the number of registered motor vehicles in counties, it cannot be said that this burden is borne proportionately by the citizens of the respective counties, for the simple reason that the amount of the tax depends upon the quantity of gasoline consumed, and the citizens of one county, though having no greater number of motor vehicles, many consume

a much larger quantity, and therefore, indirectly add to the expenditures for county road purposes in other counties.

With this limitation upon the first and third rules which we have set forth relative to the construction of statutes, we reach the conclusion that for the purpose of determining the base upon which a 5 per cent increase may be calculated by the board as contemplated in the section, it has reference to and includes all moneys raised by county taxation, which would include all moneys heretofore raised for school purposes, as provided for in section 6 of article IX of the Constitution. As a base for calculating the amount of the 5 per cent increase only, we approve the rule and adopt the illustration found in the argument of Honorable R. W. Harrison, chief deputy attorney-general, made in correcting an opinion formerly given, to wit: "Here is where I think, and I am willing to admit an error entered into the calculation. As certainly $35,000.00 is not county expenditures hereafter, so, for this purpose, that corresponding sum should not be regarded as county purposes for 1933–1934. That being so, what should have been the process? It should have been to deduct $35,000.00 from the $100,000.00, which would have left the initial base of $65,000.00, and adding 5 per cent, gives the figure of $68,250.00 as the proper allowable limit of expenditures." This illustration took the figure of $100,000, upon which, for the preceding year, the county would have raised by taxation the sum of $65,000, and the state would have contributed $35,000. The $35,000 not being a burden upon the county is not to be considered within the purview of section 20 of article XI, and therefore, while the county would not be entitled to raise $65,000 by way of taxation for school purposes, having made such expenditures in the previous year it would be entitled to take the $65,000 as a part of the base upon which to calculate the 5 per cent allowable increase in the taxes to be raised.

While not stated in the record, budget reports advise us that the money raised for high and elementary school purposes by the county of Stanislaus for the fiscal year 1932–1933, was between $400,000 and $450,000. The petitioner's method of calculation excludes this sum. We see no escape from the conclusion that this item of expenditure should have been included. It may be further observed

that while the singular includes the plural, the section reads "expenditures" which is an all-inclusive term.

■ In taking into consideration the 5 per cent allowable increase, we are of the opinion that the board of supervisors had the right to add such portion of the money to any particular item contained in the budget that appeared to them necessary or best adapted to carry on the various county functions allowable by law. This means that the aggregate of the budget items should not exceed the legal limit, and not that each particular item of expenditure should be measured by the same yardstick, and also necessarily leads to the conclusion that only moneys raised by county taxation can be considered by the board of supervisors in complying with section 20 of article XI of the Constitution.

Section 3714b of the Political Code not being involved in this action, we express no opinion as to whether it is mandatory, directory, constitutional or unconstitutional.

The judgment of the trial court is affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 22, 1934, and the following opinion then rendered thereon:

THE COURT.—■ Appellant's petition to have the above-entitled cause heard and determined by this court, after judgment in the District Court of Appeal of the Third Appellate District, is denied, but the court withholds any opinion with regard to the question as to the proper interpretation of section 20 of article XI of the Constitution.