[Civ. No. 31190.   Second Dist., Div. One.   Dec. 14, 1967.]

LOS ANGELES DODGERS, INC., Plaintiff and Appellant, v. THE COUNTY OF LOS ANGELES et al., Defendants and Respondents.

Musick, Peeler & Garrett, Gerald G. Kelly, Bruce A. Bevan, Jr., Richard T. Apel and Michael M. Murphy for Plaintiff and Appellant.

Harold W. Kennedy and John D. Maharg, County Counsel, and DeWitt W. Clinton. Deputy County Counsel, for Defendants and Respondents.

WOOD, P. J.—Plaintiff Los Angeles Dodgers, Inc., (hereafter referred to as Dodgers) seeks recovery of taxes paid under protest to defendant Los Angeles County, which distributed a portion of the tax revenue to defendant City of Los

Angeles. The taxes were levied on a 40-acre portion of 300 acres of real property in the Chavez Ravine, which property was the subject of an agreement between the Dodgers and the city relating to the acquisition of property by the Dodgers as a site for a baseball stadium. The court determined that the taxes were proper. Plaintiff appeals from the judgment that plaintiff take nothing by its actions. (There are two actions, one for recovery of taxes paid for the fiscal years 1961-1962 and 1962-1963, and the other one for recovery of taxes paid for the fiscal year 1963-1964. The actions were consolidated in the superior court.)

Appellant contends that the 40-acre portion of the property is exempt from taxation because the city, under the provisions of the agreement between the Dodgers and the city, retained legal title to, and the equitable and beneficial ownership of, the 40 acres.

The matter was submitted upon a written stipulation of facts.

On June 3. 1959, the Dodgers and the city entered into an agreement referred to as Exhibit A, and on August 16, 1960, they executed and delivered to a bank "Exchange Escrow Instructions" referred to as Exhibit 3. Copies of the agreement and escrow instructions are incorporated in the stipulation. The escrow instructions include several attached exhibits, including a form for a bond (referred to as Exhibit D).

The agreement, the escrow instructions, and the bond "constitute all of the instruments which establish and define the respective rights and obligations of the Dodgers and the city with respect to the Recreational Parcel [40-acre portion of 300 acres]."

The recitals in the agreement (Exhibit A) are in substance as follows: The city is the owner of certain property in the Chavez Ravine area. Such a property is no longer required for use by the city. The placing of such property on the tax rolls would produce substantial additional property tax revenues to the city. The Dodgers are willing to acquire such property to construct a baseball stadium thereon. The Dodgers have a long-standing policy of admitting juveniles to baseball games free of charge as a method of combatting juvenile delinquency and stimulating interest in healthful recreational activities. As part of this policy the Dodgers will construct recreational facilities not to exceed a half million dollars on a 40-acre

portion of the property to be conveyed by the city; and as a further part of said policy the Dodgers will maintain such recreational facilities for a period of 20 years, at an annual cost of $60,000. In the event that such maintenance costs in any one year do not amount to $60,000, then the Dodgers shall pay to the city the difference between $60,000 and such maintenance costs so that it (difference) may be used by the city for providing or maintaining recreational facilities elsewhere in the city. Such recreational facilities shall be under the control of the city, but the city shall not permit the scheduling of any event at any of the recreational facilities on said 40 acres which would involve a large number of participants during any time when the Dodgers have scheduled an event at the baseball stadium; and during any event at the baseball stadium, the Dodgers shall have the right to use any facilities suitable for parking as may exist within said 40 acres. Such recreational facilities are needed by the city. The city also needs a suitable place to hold various events. The Dodgers are able to have the property known as Wrigley Field conveyed to the city. The Dodgers are willing to cause Wrigley Field to be conveyed to the city for said property now owned by the city in Chavez Ravine.

After those recitals, it is agreed in substance[1] that the city will convey a total of approximately 300 acres of land owned by (or to be acquired by) the city in Chavez Ravine provided, however: (a) The city shall reserve oil and mineral rights therein. (b) One-half of the royalties from such rights shall be placed in a trust fund for maintaining recreational facilities to promote the Dodgers' youth program. (c) Title to said 40 acres shall be retained by the city for 20 years to assure performance by the Dodgers of the Dodgers' policy of providing and maintaining recreational facilities. In the event that such policy, and the provisions of the agreement pertaining to recreational facilities on said 40 acres, shall have been fully performed for a period of 20 years, title to said 40 acres shall be conveyed to the Dodgers without further consideration. (d) All property agreed to be conveyed by the city, including said 40 acres, will be conveyed free and clear of any deed restriction or use, and a title policy shall be furnished to the Dodgers. (Other provisions of the agreement relate to the construction of streets and improvements by the city, etc.)

---

[1]See *City of Los Angeles* v. *Superior Court*, 51 Cal.2d 423, 430-432 [333 P.2d 745].

The escrow instructions, which incorporate several of the provisions of the agreement, are similar to the agreement with the exception that it is agreed (in the instructions) that the Dodgers, in satisfaction of its agreement to construct recreational facilities on the 40-acre portion of the property, might deposit in escrow a performance bond in the amount of $500,000. The escrow was closed in accordance with the provisions of the instructions and agreement. (It was stipulated that the 20-year period, during which the city would retain title to the 40 acres, commenced on March 1, 1961.)

The Dodgers expended about $300,000 on grading work on the 40-acre portion of the land, and made four of the $60,000 payments to the city for maintenance of recreational facilities. No recreational facilities, or parking facilities, were constructed on said portion of the property, and, in 1965, the Dodgers paid to the city approximately $200,000 in complete satisfaction of the Dodgers' obligation to construct such facilities. "The Dodgers have never taken physical possession or control" of said portion of the property.

In 1961 the county assessed the interest of the Dodgers in said portion of the property at a valuation of $16,710, and taxes were levied on that interest, for the fiscal year 1961-1962, in the amount of $1,397.69. The Dodgers paid said taxes under protest, and filed a claim for a refund of the payments.

In 1962 the county assessed said portion of the property at a value of $184,950, which value was the "full fee simple value" thereof. If said assessment had excluded the fee simple valuation for the remaining 19 years (for which the city retained title to secure the Dodgers' performance of provisions of the agreement), then the assessed value would have been $42,854.76. Taxes in the amount of $15,462.17 were levied on the Dodgers' interest thereon for the fiscal year 1962-1963, and the Dodgers paid said taxes under protest. If the assessed valuation had been $42,854.76 (excluding 19-year fee simple value), then the taxes would have been $3,582.76 for the fiscal year 1962-1963. The Dodgers filed a claim for refund of the entire amount paid.

In 1963 the county assessed said portion of the property at a value of $427,950, which value was the "full fee simple value" thereof. If said assessment had excluded the fee simple value of the remaining 18 years (during which city would retain title), then the assessed value would have been $107,094.49. Taxes in the amount of $37,339.90 were levied on

the Dodgers' interest for said fiscal year, and the taxes were paid under protest. If the assessed value had been $107,-094.49, then the taxes would have been $9,344.31. The Dodgers filed a claim for refund of the entire amount of taxes paid.

It was also stipulated in part as follows: If the court finds that the Dodgers held no legally taxable interest in said portion of the property in said fiscal years, then judgment should be entered in favor of the Dodgers for the full amount of the taxes paid. If the court finds that the Dodgers had a taxable interest therein, but that the value of the city's interest therein should have been excluded from the assessments for these years, then judgment should be entered in favor of the plaintiff for the difference between the amount of taxes paid for these years and the amount which would have been assessed had the city's interest been excluded. If the court finds that the full fee simple value of the property was legally assessable to the Dodgers, then judgment should be entered in favor of the defendants.

As previously stated, judgment was entered in favor of the defendants. (The court made a written memorandum of decision, but did not make findings of fact.)

■ Appellant contends that the 40-acre portion of the property is exempt from taxation because the city, under the provisions of the agreement (and escrow instructions), retained legal title to, and equitable and beneficial ownership of, the 40 acres.

Article XIII, section 1, of the California Constitution provides in part that all property shall be taxed in proportion to its value except "such as may belong to this State, or to any county, city and county, or municipal corporation within this State. . . ."[2] A proviso in said section 1 is that "a mortgage, deed of trust, contract, or other obligation by which a debt is secured when land is pledged as security for the payment thereof . . . shall not be considered property subject to taxation. . . ."

In *Eisley* v. *Mohan,* 31 Cal.2d 637, 642-643 [192 P.2d 5], it is said: "In determining the scope of the constitutional exemption [for property held by state or political subdivision thereof], ownership is the decisive factor and 'it has been held or assumed in many instances that property sold under execu-

[2]Section 405 of the Revenue and Taxation Code provides: "Annually, the assessor shall assess all the taxable property in his county . . . to the persons owning, claiming, possessing, or controlling it . . . ."

tory contract by a state or a political subdivision thereof was subject to assessment for taxes in the hands of the vendee.' [Citation.] Generally speaking, land which has been sold to an individual by the federal government, or by a state, loses its tax exempt status although the government may retain the legal title as security for the payment of a part of the purchase price. (*S.R.A., Inc.* v. *Minnesota,* 327 U.S. 558, 569 [90 L.Ed. 851, 66 S.Ct. 749] ; *Irwin* v. *Wright,* 258 U.S. 219, 229 [66 L.Ed. 573, 42 S.Ct. 293].) The form of the transfer is immaterial; the determinative question is whether private rights have supplanted those of the government insofar as the use of the property is concerned. 'Where beneficial interest has passed to a vendee, the retention of legal title does not give a significant difference from the situation of a deed with a lien retained or a mortgage back to secure the purchase money.' ''

In *Eisley* v. *Mohan, supra,* Eisley purchased real property from a state agency under a contract whereby the agency retained title to the property to secure performance of provisions of the contract by Eisley. Eisley argued that the property belonged to the state and was therefore exempt from taxation under article XIII, section 1, of the Constitution. The court held (p. 647) that the property was properly assessable to Eisley. (Cf. *DeLuz Homes, Inc.* v. *County of San Diego,* 45 Cal.2d 546 [290 P.2d 544], where it was held that property leased from a federal agency was not exempt from taxation to the lessee; *Ohrbach's, Inc.* v. *County of Los Angeles,* 190 Cal.App.2d 575 [12 Cal.Rptr. 132], where it was held that property subleased to the state was not exempt from taxation; and *Tilden* v. *County of Orange,* 89 Cal.App.2d 586 [201 P.2d 86], where it was held that property subleased from a lessee who had leased it from the City of Newport was not exempt from taxation.)

In *Havens* v. *County of Alameda,* 30 Cal.App. 206 [157 P. 821], Havens and a church entered into an executory contract whereby the church sold real property to Havens. The purchase price was to be paid in installments and the church retained possession of the property for a designated period upon the church's agreement to pay to Havens interest at the rate of 4 percent per annum on the amount of the installment payments. The county assessed taxes on the property to Havens, who paid the taxes under protest and brought an action for refund thereof. Havens contended that no beneficial

ownership passed to him under the executory contract. The court held that beneficial ownership passed to Havens and that the church was in effect a tenant of Havens.

In the present case the city agreed to transfer 300 acres in the Chavez Ravine to the Dodgers in exchange for the transfer of Wrigley Field to the city and in exchange for the Dodgers' agreement to provide and maintain recreational facilities on 40 acres of the 300 acres. The agreement provided that the Dodgers would expend $500,000 to provide facilities and would contribute $60,000 a year, for 20 years, for the maintenance of such facilities, with the understanding that if the maintenance expenses did not amount to $60,000, the city might use such unused portion of the annual payment to provide or maintain recreational facilities elsewhere in the city. It was also agreed that the city would retain legal title to the 40 acres to secure performance by the Dodgers of the Dodgers' obligations regarding the recreational facilities, and that the city would, after full performance of those obligations, convey title to the Dodgers "forthwith, without further consideration." It was expressly stated in the agreement that the property was no longer required for use by the city and that the placing of the property on the tax rolls would produce substantial additional revenue to the city.

It is stipulated that the Dodgers have never taken physical possession of the 40-acre portion of the property. It appears, however, that the city has not possessed or used it. The Dodgers, by making improvements and a cash payment, have satisfied their obligation to expend $500,000 for recreational facilities; and the Dodgers have made (to date of trial) the annual payments ($60,000 a year) for maintaining recreational facilities, which payments the city is permitted under the agreement to use (and apparently has been using) in providing and maintaining recreational facilities elsewhere in the city. It thus appears, with reference to the Dodgers' obligations to provide and maintain recreational facilities on the 40-acre portion of the property, that such obligations, in effect, have been fulfilled, except for the annual payments of $60,000 for the remainder of the 20-year period.

Under the circumstances herein, the Dodgers received equitable and beneficial ownership of the 40 acres; and the city's retention of legal title to secure performance of the obligations regarding recreation did not preclude the assessment of said property at full value to the Dodgers. (See *Eis-*

*ley* v. *Mohan, supra,* 31 Cal.2d 637 [192 P.2d 5]; *S.R.A., Inc.* v. *Minnesota* [1946] *supra,* 327 U.S. 558 [90 L.Ed. 851, 66 S.Ct. 749]; *New Brunswick* v. *United States,* 276 U.S. 547, 555-556 [72 L.Ed. 693, 697-698, 48 S.Ct. 371].) The assessments made, and the taxes levied, were proper. By reason of the above conclusions, it is not necessary to discuss other contentions on appeal.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied January 9, 1968, and appellant's petition for a hearing by the Supreme Court was denied February 8, 1968.