[No. E002539. Fourth Dist., Div. Two. Mar. 24, 1987.]

CITY OF ANAHEIM et al., Plaintiffs and Appellants, v.
COUNTY OF SAN DIEGO et al., Defendants and Respondents.

COUNSEL

Rourke & Woodruff, Alan R. Watts, Lydia S. Levin and Lois E. Jeffrey for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Richard E. Nielsen, Deputy Attorneys General, Lloyd M. Harmon, Jr., County Counsel, Daniel J. Wallace, Chief Deputy County Counsel, and Bruce W. Beach, Deputy County Counsel, for Defendants and Respondents.

## OPINION

KAUFMAN, J.*—Plaintiffs City of Anaheim and City of Riverside (plaintiffs) appeal from a judgment which determined, for the purpose of fixing the tax lien assessment date, plaintiffs acquired their ownership interest in San Onofre Nuclear Generating Station (San Onofre Station) in 1980 rather than in 1977 as plaintiffs contended.

### The Problem

The California Constitution, article XIII, section 11, subdivision (a), provides in pertinent part: ". . . Improvements owned by a local government that are outside its boundaries are taxable if they were taxable when acquired or were constructed by the local government to replace improvements which were taxable when acquired."

■ Existing improvements that were taxable when acquired are subject to taxation pursuant to article XIII, section 11. Improvements which are newly constructed after acquisition, however, and which are not constructed to substitute for or to replace taxable improvements are not subject to taxation. (*Sacramento Mun. Util. Dist.* v. *County of El Dorado* (1970) 5 Cal.App.3d 26, 34 [84 Cal.Rptr. 728]; see *City of Los Angeles* v. *County of Mono* (1959) 51 Cal.2d 843, 848 [337 P.2d 465].)

■ The instant case involves construction of a new power plant facility —the San Onofre Station. The critical issue, then, is when plaintiffs first "owned" their participatory interests: November 1, 1977, before the construction of the San Onofre Station, or when the Participation Agreement was signed, in October 1980, after the plant was constructed. Obviously, plaintiffs prefer the 1977 lien date because most of the improvements were constructed thereafter and the new improvements would not be taxable because they were not constructed to replace or substitute for existing improvements.

*Assigned by the Chairperson of the Judicial Council.

*Facts*

The facts which bear on the date of acquisition of plaintiffs' ownership interests in the San Onofre Station are as follows.

In 1972 plaintiffs entered into a settlement agreement with Southern California Edison Company (Edison) in another lawsuit. Pursuant to the settlement agreement in that suit, plaintiffs received the right to participate in the ownership of the San Onofre Station. The settlement agreement required plaintiffs to obtain all necessary approvals, including voter approvals, for plaintiffs' contractual undertakings and financial arrangements for participation in ownership. Plaintiffs' right to participate would terminate unless all approvals were obtained by November 1, 1977. All the necessary approvals were in fact obtained before November 1, 1977.

By November 1, 1977, the Participation Agreement between plaintiffs, Edison and San Diego Gas and Electric (SDG&E) (co-owner with Edison of the San Onofre Station), providing for plaintiffs' acquisition of ownership interests in the San Onofre Station had been fully negotiated. The Participation Agreement provides that "*Upon execution* of this Participation Agreement: [¶] ... Edison, [SDG&E], Riverside, and Anaheim shall own Units 2 and 3 as tenants-in-common in proportion to their respective Generation Entitlement Shares." (Italics added.) Edison agreed to sell and plaintiffs agreed to buy plaintiffs' ownership interest "as of the date of execution of this Participation Agreement."

The Participation Agreement provided it was "Executed as of the 1st day of November, 1977."

The parties did not sign the Participation Agreement on November 1, 1977, however. As reflected by a separate Letter Agreement dated November 1, 1977, among plaintiffs, Edison and SDG&E, Edison and SDG&E represented that they could not "prudently execute the Participation Agreement" until resolution of an investment tax credit problem. Edison had requested but had not yet received a ruling from the Internal Revenue Service (IRS) on the investment tax credit question.[1] In addition, plaintiffs represented that they could not prudently issue revenue bonds "to finance their acquisition of an interest in [the San Onofre Station] *until the Participation Agreement has been executed.*" (Italics added.) The parties agreed in the Letter

---

[1]The question was whether acquisition by a city of an undivided cotenancy interest in utility facilities with an investor-owned utility would disqualify the interest of the investor-owned utility for investment tax credit purposes.

Agreement of November 1, 1977, that the Participation Agreement and related agreements "shall be executed and become effective in accordance with the terms thereof when each Party is, in its sole discretion, satisfied that the execution of said agreements will not adversely affect the investment tax credit for those portions of [the San Onofre Station] owned by Edison and [SDG&E]." The Letter Agreement further provided that "*If the agreements . . . are executed,* Anaheim and Riverside shall pay to Edison and [SDG&E] those amounts due under Section 8 of the Participation Agreement [for reimbursement of proportionate share of costs up to November 1, 1977] in accordance with the terms thereof plus 9.0% of those amounts . . . from the date such payment would have been due under the Participation Agreement to the date of payment." (Emphasis added.) The Letter Agreement provided that it would have no further force and effect "If the agreements [including the Participation Agreement] . . . have not been executed by April 1, 1979 . . . ."

In March 1979, plaintiffs, Edison and SDG&E entered into a first amendment to the Letter Agreement of November 1, 1977. The amendment stated that Edison and SDG&E had obtained a favorable letter ruling from the IRS, but an ambiguity in the letter ruling required further clarification. Because the clarification could not be obtained from the IRS before expiration of the April 1, 1979, deadline date contained in the Letter Agreement, the parties agreed to extend the deadline but further provided that "If the agreements [including the Participation Agreement] . . . have not been executed by July 1, 1979, this Letter Agreement shall have no further force or effect . . . ." The parties also agreed to amend section 6.4 of the Participation Agreement "prior to execution" of the Participation Agreement and set forth the text of the amendment.

Then, although it appeared by June 1979 the investment tax credit issue had been adequately resolved to the satisfaction of the parties, a new problem had arisen. The Nuclear Regulatory Commission (NRC) had let stand a ruling that a transfer of ownership in a nuclear power plant without NRC approval was a violation of the Atomic Energy Act. Accordingly, plaintiffs, Edison and SDG&E entered into a new Letter Agreement dated June 29, 1979, which recited that "Edison and [SDG&E] have determined that they cannot lawfully execute the agreements . . . until approval of the Nuclear Regulatory Commission for a change of ownership has been received." The parties agreed to "take those actions necessary to obtain NRC approval of the application for permission to transfer an ownership interest in the [San Onofre Station] . . . to Anaheim and Riverside . . . ."

The new Letter Agreement further provided: "Notwithstanding any previous agreement to the contrary, the agreements [including the Participa-

tion Agreement] . . . shall be executed by Edison, and by [SDG&E] in the case of the Participation Agreement, when the Nuclear Regulatory Commission has granted permission to transfer to Anaheim and Riverside, respectively, ownership interests in the [San Onofre Station] . . . . Riverside and Anaheim shall execute said agreements within seventy-five (75) days after Edison, and in case of the Participation Agreement, [SDG&E], have executed said agreements, and *said agreements shall then become effective in accordance with the terms thereof.*" (Italics added.)

Plaintiffs point out that each of the Letter Agreements reflects that the Participation Agreement had been "fully negotiated" and was in "final form," and that, after execution, plaintiffs would pay the amounts due under the Participation Agreement to reimburse Edison for plaintiffs' proportional share of the construction costs plus interest from the date the payments would have been due under the Participation Agreement.

NRC approval was ultimately obtained and the parties signed the Participation Agreement in 1980. The Participation Agreement recites, however, that it was "Executed as of the 1st day of November, 1977."

By an oral agreement between plaintiffs and defendants (County of San Diego, San Diego Board of Supervisors, San Diego County Treasurer-Tax Collector, San Diego Assessor, and the State Board of Equalization, among others), the State Board of Equalization "assumed the responsibility for deriving the assessed values for the 1981-1982 tax year for land and improvements owned by Plaintiffs" at the San Onofre Station. The Board of Equalization provided valuations as of lien dates in both 1977 and 1980, but recommended that the 1980 date be used. Defendant San Diego County therefore sent tax bills to plaintiffs based on the 1980 values. Plaintiffs paid the bills under protest, and filed claims for refund which were denied. Plaintiffs thereupon instituted this action for refund of taxes.

*Discussion*

■ Preliminarily, we note plaintiffs' argument that the issue facing this court is purely legal, and therefore subject to full review by this court. The facts were stipulated below and there is no conflicting evidence as to the acts which occurred. We therefore agree that the cause is fully reviewable by this court. (Cf. *Tupman* v. *Haberkern* (1929) 208 Cal. 256, 263 [280 P. 970]; Code Civ. Proc., § 43.)

We also agree with plaintiffs that plaintiffs' property tax liability is governed by California Constitution, article XIII, section 11, and that plain-

tiffs' tax liability is limited to interests which were taxable when acquired. The question is: When did plaintiffs acquire their interests in the San Onofre Station for purposes of property taxation?

In its statement of decision the trial court pointed out it was undisputed that the Participation Agreement was executed by the parties in 1980. Plaintiffs contend, however, that although it was undisputed the Participation Agreement was *signed* in 1980, it provides by its own terms that it was "Executed as of the 1st day of November, 1977."

Plaintiffs further urge that the "mere passage of title" is not conclusive on the issue of taxability, but rather that the terms of the contract are controlling, citing *General Dynamics Corp.* v. *County of L. A.* (1958) 51 Cal.2d 59, 67 [330 P.2d 794]; *Eisley* v. *Mohan* (1948) 31 Cal.2d 637, 642-644 [192 P.2d 5]; *Los Angeles Dodgers, Inc.* v. *County of Los Angeles* (1967) 256 Cal.App.2d 918 [64 Cal.Rptr. 465]; and *City of Long Beach* v. *Aistrup* (1958) 164 Cal.App.2d 41, 48 [330 P.2d 282]. Plaintiffs contend the terms of the contract here, including the recitation the execution "as of" November 1, 1977, as well as provisions for certain payments including interest, manifest the intent of the parties that all rights and responsibilities pursuant to the Participation Agreement be effective as of November 1, 1977.

Plaintiffs' position cannot be sustained.

Although plaintiffs obtained the "right to participate" in ownership of San Onofre Station pursuant to the settlement agreement in 1972, the "right to participate" is different from actual participation.

The undisputed facts show that the Participation Agreement, although in "final form" as of November 1, 1977, could not be executed on November 1, 1977, or for some time thereafter, for two specific reasons: Edison and SDG&E stated they could not execute the Participation Agreement unless they received a favorable tax ruling, and the parties needed to obtain NRC approval for a transfer in ownership of a nuclear power plant. If either condition had failed—for example, if either the IRS had ruled unfavorably or the NRC had denied approval for transfer of the ownership interests to plaintiffs —any attempt to assess plaintiffs for property interests in the San Onofre Station on the basis of "ownership" acquired in 1977 would have been plainly unmeritorious. No ownership interest, legal or beneficial, taxable or otherwise, was transferred to plaintiffs until after the two contingencies were met and the Participation Agreement was signed in 1980.

Plaintiffs' contentions that the court must look to the contract and that the passage of legal title is not controlling are correct as far as they go, but what is meant is that the legal title holder may not be liable for taxes if the contract reveals another party has a taxable beneficial or equitable interest in the property. ■ Ordinarily, the obligation for paying taxes rests on the person holding legal title. Where legal title is retained for security purposes only, however, and another person has beneficial or equitable ownership, the obligation is that of the beneficial or equitable owner. (*Estate of Backesto* (1923) 63 Cal.App. 265, 269 [218 P. 597]; *Three G Distill. Corp.* v. *County of L. A.* (1941) 46 Cal.App.2d 498, 502 [116 P.2d 143]; *County of San Diego* v. *Davis* (1934) 1 Cal.2d 145, 147 [33 P.2d 827].)

The cases relied upon by plaintiffs are all of the same ilk. In *General Dynamics Corp.* v. *County of L. A., supra,* 51 Cal.2d 59, at page 67, the court looked to the terms of the contract to determine which party held the essential indicia of ownership. *Eisley* v. *Mohan, supra,* 31 Cal.2d 637 holds that a buyer in possession under an executory contract is taxable as the beneficial owner of property, and that the holder of security title is not taxable. (*Id.,* at p. 643.) In *Los Angeles Dodgers, Inc.* v. *County of Los Angeles, supra,* 256 Cal.App.2d 918, an agreement was executed between the parties in which the county retained title to the property for 20 years to assure compliance with the Dodgers' policies for providing recreation facilities. The court ruled that, although the Dodgers had not taken physical possession and were not using the land, the equitable and beneficial ownership had been transferred to the Dodgers whereas the county retained legal title for security purposes only. The land was therefore taxable to the Dodgers. In *City of Long Beach* v. *Aistrup, supra,* 164 Cal.App.2d 41, the court was concerned with whether the significant date for determining the tax status of the property is the date of taking possession or the date title passes to a public entity in eminent domain proceedings. The taking of possession was held in that case to effectively divest the former owners' interest, but we note that the taking of possession by the City of Long Beach rendered it at least the beneficial if not the legal owner.

The contract is not determinative of taxability, however, in the sense that the parties may not by agreement between themselves determine, for example, which improvements are replacements for old improvements which had been subject to taxation, and which are new constructions. (*Sacramento Mun. Util. Dist.* v. *County of El Dorado, supra,* 5 Cal.App.3d 26, 34-35; see *City of Los Angeles* v. *County of Mono, supra,* 51 Cal.2d 843, 849.) Similarly, the parties here may not simply determine for themselves that an agreement was "executed as of" a certain date in the absence of any objective facts to support such a finding and thereby alter what would otherwise be the date of acquisition for purposes of taxation.

In the instant case, plaintiffs did not obtain an equitable or beneficial or any taxable ownership interest on November 1, 1977, or any time thereafter until the Participation Agreement was signed in 1980. The parties were not obligated to sign the Participation Agreement until after both conditions, relating to the tax issue and NRC approval of the transfer, were satisfactorily resolved. The language of the Letter Agreements in particular indicates no transfer of any ownership interest to plaintiffs occurred until after all problems with the IRS and NRC were resolved and the Participation Agreement was actually executed in 1980.

## Disposition

The judgment is affirmed.

McDaniel, Acting P. J., and Hews, J., concurred.